UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MCKINLEY DWAYNE LAY,                    )
                                        )
              Plaintiff,                )
                                        )
v.                                      )          No. 3:15-CV-316-CCS
                                        )
CAROLYN W. COLVIN,                      )
Acting Commissioner of Social Security, )
                                        )
              Defendant.                )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the consent of the parties [Doc. 12]. Now before the Court

is the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 13, 14 ]

and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15, 16 ].

McKinley Dwayne Lay ("Plaintiff") seeks judicial review of the decision of the Administrative

Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting

Commissioner of Social Security ("Commissioner").

On January 5, 2012, the Plaintiff filed an application for disability insurance benefits

("DIB"), claiming a period of disability that began September 12, 2011. [Tr. 145]. After his

application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr.

106]. On October 23, 2013, a hearing was held before an ALJ to review determination of the

Plaintiff's claim. [Tr. 35-61]. On February 5, 2014, the ALJ found that the Plaintiff was not

disabled. [Tr. 13-34]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-7];

thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted his administrative remedies, the Plaintiff filed a Complaint with this

Court on July 24, 2015, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.   ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since September 12, 2011, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments; mild degenerative disc disease, asthma, hearing loss, osteoarthritis, obesity, anxiety, depressions and functional illiteracy. (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in the 20 CFR 404.1567(b) except that he can frequently perform all postural activities, but never climb ladders, ropes, and scaffolds. Additionally, he can work in quiet work environments but not around pulmonary irritants. Furthermore, he cannot perform jobs that require excellent hearing or where reading and writing are essential elements of the job. Mentally, he has the ability to understand, remember, and carry out simple instructions. Moreover, he is capable of maintaining concentration, persistence and pace for those tasks. While he has the ability to interact appropriately with peers and supervisors, he should not work with the general public. However, he can adapt to routine workplace changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

2

7. The claimant was born on January 3, 1963, and was 48 years old, which is defined as a younger individual age 18-49, on the alleged onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rule as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 12, 2011, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 18-29].

## II. DISABILITY ELIGIBILITY

This case involves an application for SSI benefits. To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

3

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A

claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see 20 C.F.R. §§ 404.1505(a), 4015.905(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not
> disabled.

> 2. If claimant is not doing substantial gainful activity, his
> impairment must be severe before he can be found to be disabled.

> 3.  If claimant is not doing substantial gainful activity and is
> suffering from a severe impairment that has lasted or is expected to
> last for a continuous period of at least twelve months, and his
> impairment meets or equals a listed impairment, claimant is
> presumed disabled without further inquiry.

> 4.  If claimant's impairment does not prevent him from doing his
> past relevant work, he is not disabled.

> 5.  Even if claimant's impairment does prevent him from doing his
> past relevant work, if other work exists in the national economy
> that accommodates his residual functional capacity ("RFC") and
> vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. §

404.1520).  The claimant bears the burden of proof at the first four steps.  Id.  The burden shifts

to the Commissioner at step five.  Id.  At the fifth step, the Commissioner must prove that there

is work available in the national economy that the claimant could perform.  Her v. Comm'r of

4

Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his/her findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing

5

Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.  POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ committed three errors. First, he asserts that the ALJ failed to properly weigh the evidence from his treating pulmonologist regarding black lung disease. Second, the Plaintiff argues that the ALJ failed to properly weigh the residual functional capacity assessments from Dr. Baker, Dr. Salekin, and nurse practitioner, Betty Stanley. Third, the Plaintiff avers that the vocational expert's testimony in response to the ALJ's residual functional capacity assessment did not constitute substantial evidence that significant numbers exist.

The Commissioner responds that substantial evidence supports the ALJ's evaluation of Plaintiff's impairments at Steps Two and Four of the sequential evaluation process. In addition, the Commissioner asserts that substantial evidence supports the ALJ's evaluation of the opinions in formulating the residual functional capacity. Finally, the Commissioner argues that substantial evidence supports the ALJ's finding that the Plaintiff could perform other work that exists in significant numbers in the national economy.

## V.     ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A.     Black Lung Disease

As mentioned above, the Plaintiff argues that the ALJ failed to weigh evidence from his treating pulmonologist regarding black lung disease. Specifically, the Plaintiff asserts that the ALJ committed legal error when she found that black lung disease was not a medically determinable impairment or a severe impairment. The Plaintiff argues that the ALJ incorrectly concluded that no diagnosis of black lung disease had been made, which was based on Plaintiff's attorney's alleged statement at the hearing. The Plaintiff asserts that the ALJ's conclusion is not supported by the record.

The Commissioner responds that the ALJ reasonably relied on Plaintiff's attorney's statement at the hearing that there was no diagnosis of black lung disease made by a physician. The Commissioner argues that in addition to considering counsel's statement, the ALJ also made her own determination that the evidence did not contain diagnostic evidence of black lung disease. The Commissioner asserts that the ALJ acknowledged treatment notes referencing pneumoconiosis, but she noted that these references were based on the Plaintiff's self-diagnosis. Finally, the Commissioner argues that there is no reversible error in the ALJ failing to find Plaintiff's black lung disease to be a severe impairment at Step Two because she found that he had other severe impairments and continued the evaluation. The Commissioner states that the ALJ found an impairment related to his lungs and that remand for further consideration of the Plaintiff's alleged black lung disease is not required.

In the instant matter, during the hearing, the ALJ stated, "I noticed that in the medical records, there's a lot of references to your client reporting that he has black lung disease. Is there

7

a doctor who has diagnosed that?" [Tr. 39]. Plaintiff's counsel responds:

> We're in the process. Dr. Hal Hughes in 2F does say early simply pneumoconiosis cannot be entirely excluded. But as far as that being absolute, what we have in the file is all I'm aware of. Claimant currently has a black lung claim pending and I've given you everything that the attorney has given me on that case.

[Tr. 39].

The ALJ's opinion stated that the Plaintiff alleged black lung disease but that his attorney admitted at the hearing that there was no diagnosis of black lung disease by a physician. [Tr. 19]. Thus, the ALJ found that since there was no evidence from an acceptable medical source, the Plaintiff's alleged black lung disease was not a medically determinable impairment. Later, in the opinion, the ALJ states as follows:

> Furthermore, the above residual functional capacity is consistent with the claimant's assertions regarding breathing issues triggered by exertion. His contention that his breathing problems are so severe that resultant fatigue prevents him from working is inconsistent with clinical findings (Exhibits 1F, 2F, 4F, and 10F, and 85). More specifically, his reports of severe dyspnea are "completely out of proportion to his pulmonary findings" (Exhibit 2F). Notwithstanding periodic flare-ups, the medical evidence indicates his symptoms subside with rest and medication without necessitating portable oxygen (Exhibit 15F and 30).
>
> Thus, the claimant's allegations of incapacitating asthma-related limitations are inconsistent with his consistently normal respiratory examinations with "fairly normal" lung volumes. While there are treatment notes within the record referencing "pneumoconiosis," these are primarily based on the claimant's self-diagnosis (Exhibits 1F at 4, 2F at 5, 36, and 11F). In fact, the record lacks definitive diagnostic evidence of black lung, without pulmonary findings supporting his allegations of symptomatic manifestations creating colossal limitations Nonetheless, in light of the claimant's lifelong breathing troubles and coal mining work he could not work in environments around pulmonary irritants (Exhibits 1A, 3A, and 16F).

8

[Tr. 25].

The Plaintiff points to three medical records to show that he has been diagnosed with black lung disease. After the hearing, Plaintiff's counsel sent the ALJ a medical note from Dr. Glenn Baker dated April 25, 2012. [Tr. 770-83]. Dr. Baker summarizes an x-ray performed on April 25, 2012, as follows: "Coal Workers' Pneumoconiosis category 2/2 with AX." [Tr. 772]. Dr. Baker later states in his report, "The patient has advanced Coal Workers' Pneumoconiosis and chronic bronchitis with exertional syncope. He alleges to be a never-smoker. The primary cause of his condition is his coal mine employment and coal dust exposure." [Tr. 773].

The Plaintiff also relies on Dr. Hughes's and Dr. Templeton's records. Dr. Hughes's medical record dated January 18, 2011, states: Chest x-ray again shows some increased nodular and mild interstitial markings. These are subtle, but I do think it rises to the level of coal worker's pneumoconiosis. There were no acute findings, but he does still have cardiomegaly." [Tr. 242]. Dr. Hughes impressions, "Coal workers' pneumoconiosis which I do not think explains his severe dyspnea." [Tr. 242]. He recommends that the Plaintiff continue to follow-up with Reachs Clinic for his coal workers' pneumoconiosis. [Tr. 242]. In addition, in another medical record signed by Larry E. Wolfe, M.D.,[1] on July 18, 2012, the Plaintiff's problem was listed as pneumoconiosis. [Tr. 571].

A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). Courts have described "Step Two [as] 'a de minimis hurdle' that a claimant clears unless the impairment is only a 'slight abnormality that minimally affects work

---

[1] Plaintiff cites to this medical record as Dr. Templeton's record, but it appears it was signed by Dr. Wolfe on July 18, 2012. [Tr. 571].

ability.'" McGlothin v. Comm'r of Soc. Sec., 299 F. App'x 516, 522 (6th Cir. 2009) (quoting

Anthony v. Astrue, 266 F. App'x 451, 457 (6th Cir. 2008)) (other citations omitted). "[A]n

impairment can be considered not severe only if it is a slight abnormality that minimally affects

work ability regardless of age, education and experience." Johnson v. Colvin, No. 7:15-cv-039,

2016 WL 3257124, at *3 (E.D. Ky. June 13, 2016) (Higgs v. Bowen, 880 F.2d 860, 852 (6th Cir.

1988)). "The mere diagnosis of a condition does not thereby establish its severity." Id. (citing

Higgs, 880 F.2d at 863).

In McGlothin, the plaintiff argued that the ALJ erred at Step Two by not finding her

impairments of arterial vascular disease and hypertension severe. 299 F. App'x at 522. The

Commissioner argued that the plaintiff waived this issue by failing to raise it before the district

court. Id. The court, however, found that even if the plaintiff properly preserved this issue, "it is

not dispositive." Id. The court reasoned:

> "[O]nce any one impairment is found to be severe, the ALJ must
> consider both severe and nonsevere impairments in the subsequent
> steps. Therefore, because the ALJ found that [plaintiff] had some
> severe impairments, he proceeded to complete steps three through
> five of the analysis. It then became 'legally irrelevant' that her
> other impairments were determined to be not severe.

Id.; see also Boruta v. Comm'r of Soc. Sec., No. 1:15-cv-274, 2016 WL 1156594, at *3 ("Once

the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed

to classify a separate condition as a severe impairment does not constitute reversible error.").

In the instant matter, the medical records show that several physicians diagnosed the

Plaintiff with pneumoconiosis. Thus, the ALJ was incorrect when she stated that there had been

no diagnosis of pneumoconiosis. The Court, however, finds the ALJ's error harmless. As

mentioned above, it is "legally irrelevant" that the ALJ did not classify Plaintiff's

pneumoconiosis as a severe impairment because the ALJ continued to Step Three. See Scott v. Colvin, No. 3:12-cv-506, 2013 WL 5203471, at *7 (E.D. Tenn. Aug. 9, 2013) (Report and Recommendation), accepted on Sept. 16, 2013. ("However, where an ALJ errs in finding a particular impairment to be "non-severe" in step two of the analysis, the error is harmless if the ALJ finds at least one severe impairment and continues to address each impairment in determining the claimant's RFC."). More importantly, when determining the Plaintiff's residual functional capacity, the ALJ considered his pneumoconiosis and found that "in light of the claimant's lifelong breathing troubles and coal mining work he could not work in environments around pulmonary irritants." [Tr. 25]. Finally, after the ALJ's discussion with respect to black lung disease, she states, "While these issues are not included on the list of severe impairments, it is noted that the residual functional capacity adopted herein more than fully accommodates any minimal limitations that the claimant may have because of these conditions." [Tr. 19]. Accordingly, the Court finds the ALJ's error harmless.

> B.      **Failure to Properly Weigh**

The Plaintiff argues that the ALJ failed to properly weigh the residual functional capacity assessments from Dr. Baker, Dr. Salekin, and nurse practitioner, Betty Stanley. The Commissioner argues that substantial evidence supports the ALJ's evaluation of the opinions in formulating the residual functional capacity. The Court will address the Plaintiff's arguments in turn.

> *(1) Glenn Baker, M.D.*

Specifically, the Plaintiff argues that the ALJ acknowledged that Dr. Baker was a treating physician, but she only gave his opinion "some weight." The Plaintiff asserts that the ALJ claimed that Dr. Baker's evaluation was based on the Plaintiff's subjective complaints and was

disproportionate to the objective medical evidence, but the ALJ failed to cite evidence for her conclusion. The Plaintiff argues that Dr. Baker's opinion is consistent with Dr. Salekin's and Ms. Stanley's opinions. The Plaintiff states that despite recognizing that Dr. Baker was the treating physician, the ALJ failed to analyze the factors set forth in 20 C.F.R. § 404.1527.

The Commissioner responds that the ALJ mischaracterized Dr. Baker as a treating physician and that this mischaracterization does not require remand because it only resulted in the ALJ giving more weight and credibility to Dr. Baker's opinion than it deserved. Thus, the Commissioner argues that the ALJ was not required to provide good reasons for the weight afforded to Dr. Baker's opinion. The Commissioner continues that the ALJ provided good reasons for the weight given even though she was not required. The Commissioner asserts that the ALJ explained that Dr. Baker's opinion was based on subjective complaints and not consistent with the evidence. The Commissioner argues that these reasons are sufficient. Moreover, the Commissioner states that the ALJ spent seven pages summarizing the evidence elsewhere in the record and that the ALJ is not required to restate all the evidence again. Finally, the Commissioner asserts that the ALJ was not required to discuss all the evidence as long as her factual findings as a whole show that she implicitly considered the record as a whole.

In the Plaintiff's Reply [Doc. 17], he asserts that the Court is not free to accept post hoc rationalization for agency actions. The Plaintiff argues that just because a physician sees a patient only one time does not mean the physician is not a treating physician for purposes of the proper evaluation of the evidence. The Plaintiff submits that the ALJ must consider a host of factors to determine whether a physician is a treating physician. Further, the Plaintiff argues that the ALJ failed to cite evidence showing that Dr. Baker's opinion is inconsistent with the medical record.

Dr. Baker saw the Plaintiff on April 25, 2012, for a pulmonary evaluation. [Tr. 770]. Dr. Baker noted that he was an evaluating physician. [Tr. 770]. He performed a physical examination and reviewed an x-ray, pulmonary function study, and an arterial blood gas test. [Tr. 772]. He stated that the Plaintiff has exertional syncope, which would make it unsafe for him to work in any occupation "which sudden loss of consciousness would expose him or others to danger." [Tr. 773]. He stated that the Plaintiff had advanced coal workers' pneumoconiosis and chronic bronchitis with exertional syncope. [Tr. 773]. Dr. Baker opined that the maximum weight the Plaintiff could lift is fifteen pounds but that he could only frequently lift ten pounds. [Tr. 774]. In addition, Dr. Baker opined that the Plaintiff could stand and/or walk for three hours and sit for six hours. [Tr. 774]. He stated that the Plaintiff did not have any limitations with respect to pushing, pulling, reaching, handling, fingering, feeling, seeing, hearing, and speaking. [Tr. 774]. However, Dr. Baker also opined that the Plaintiff could never climb or crawl and that he could only occasionally balance, stoop, kneel, and crouch. [Tr. 774]. Finally, Dr. Baker also noted, "Exposure to temperature extremes, as well as dust, fumes, and changes in humidity can all aggravate his condition." [Tr. 774].

The ALJ gave Dr. Baker's opinion "some weight" and noted that Dr. Baker had a treating relationship with the Plaintiff. [Tr. 27]. The ALJ explained that Dr. Baker's evaluation is "based heavily on subjective complaints that are disproportionate to the objective medical evidence." [Tr. 28]. The ALJ noted that Dr. Baker found the Plaintiff capable of lifting a maximum of fifteen pounds, which closely signifies light exertional capabilities. [Tr. 28]. In addition, the ALJ stated, "Moreover, [Dr. Baker] found the claimant able to perform postural activities occasionally, which is not a significant deviation from the frequent limitations the undersigned has found." [Tr. 28]. The ALJ continued that Dr. Baker completed a medical source letter to

13

indicate that pain levels affect work activities but that impairments must be established by objective medical evidence and not claimant's statement of symptoms. [Tr. 28]. The ALJ explained that Dr. Baker's opinion is inconsistent with the medical record and without substantial from other evidence. [Tr. 28].

Before addressing the treating physician rule, the Court must analyze whether Dr. Baker is in fact a treating physician. Dr. Baker saw the Plaintiff one time on April 25, 2012, and noted on the medical record that he was an evaluating physician. [Tr. 770-75]. As mentioned above, the Plaintiff asserts that just because a physician sees a patient only one time does not automatically mean that the physician is not a treating physician for purposes of proper evaluation of the evidence. The Court disagrees. As explained in Luteyn v. Comm'r of Soc. Sec., 528 F. Supp.2d 739 (W.D. Mich. 2007), "Luteyn's characterization of Dr. Cox as his treating physician is unsupported by the record and flatly contrary to guidance provided by our circuit . . . a recent Sixth Circuit panel held that, as a matter of law, a single examination does not suffice to create a treating relationship." Id. at 744 (citing Kornecky v. Comm'r of Soc. Sec., 167 Fed. App'x 496, 506 (6th Cir.2006) (per curiam). The court continued, "A plethora of decisions unanimously hold that a single visit does not constitute a treating relationship." Id. (quoting Kornecky, 167 Fed. App'x at 506) (other citations omitted). Furthermore, the court explained, "As our circuit reasoned in an earlier, published decision:

> The treating physician doctrine is based on the assumption that a medical professional who has dealt with the claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once.

Id. at 743-44. The Court finds Dr. Baker was not a treating physician, the ALJ was not required to provide a written analysis of the factors set forth in § 404.1527, and the ALJ's incorrect

14

statement that Dr. Baker was a treating physician is harmless. In addition, although the Plaintiff argues that the ALJ failed to cite the objective evidence that was inconsistent with Dr. Baker's opinion, the ALJ discusses such evidence elsewhere in the opinion, such as the normal spirometry results [Tr. 357] and Dr. Hughes's statement, "severe dyspnea on exertion with chest tightness completely out of proportion to his pulmonary findings." [Tr. 242]. Accordingly, the Plaintiff's argument is not well-taken.

*(2) Betty Stanley, N.P.*

The Plaintiff argues that the Ms. Stanley's opinion should have been given greater weight pursuant to the factors contained in 20 C.F.R. § 404.1527(d)(2). The Plaintiff asserts that Ms. Stanley regularly treated him, had access to all his medical records, and her opinion was consistent with Dr. Baker and Dr. Salekin.

The Commissioner argues that the ALJ "clearly considered" Ms. Stanley's opinion and reasonably found that Ms. Stanley's opinion was entitled to little weight because it was inconsistent with the other evidence in the record.

Ms. Stanley wrote a letter dated June 17, 2013, explaining the Plaintiff's medical problems. [Tr. 629]. She stated that she has seen the Plaintiff for the past thirty years. [Tr. 629]. She notes that he has COPD and severe back pain. [Tr. 629]. She states that the Plaintiff "is anxious and depressed with severe pain." [Tr. 629]. She addresses the Plaintiff's ability to work, the Plaintiff's concerns regarding income, and the Plaintiff's educational level. [Tr. 629-30]. Ms. Stanley opines that the Plaintiff cannot lift more than ten pounds due to his severe lumbar disc disease and spurring. [Tr. 632]. She states that he is able to perform work in an optional sit/stand position less than three hours, but she does not explain why. [Tr. 633]. In addition, she opines that he can never climb, balance, crouch, kneel, or crawl due to his severe lumbar and knee pain.

15

[Tr. 633]. Moreover, she states that several of the Plaintiff's physical functions have been affected by the impairment, including reaching, handling, feeling, and pushing/pulling due to severe joint pain. [Tr. 634]. Finally, Ms. Stanley also opines that the Plaintiff has several environmental restrictions. [Tr. 634]

The ALJ stated that the "treating source statement" provided by Ms. Stanley was given little weight because it included restrictions inconsistent with the demonstrated severity within the record. [Tr. 28]. The ALJ explained, "More specifically, the objective testing, including spinal x-rays, pulmonary functioning test and oximetry tests are all essentially normal." [Tr. 28]. In addition, the ALJ noted that the Plaintiff's need for assistance because he is illiterate and cannot do manual labor are not criteria for finding disability benefits. [TR. 28]. Finally, the ALJ noted that Ms. Stanley was not an acceptable medical source "and therefore the opinion is evaluated insofar as it provides some insight into the claimant's impairments." [Tr. 28].

There is no dispute that Ms. Stanley is not an acceptable medical source. See McNamara v. Comm'r of Soc. Sec., 623 Fed. Appx. 308, 309 (6th Cir. 2015) ("A nurse practitioner is not an 'acceptable medical source' under the applicable regulations, but rather falls into the category of 'other sources.'"). Social Security Ruling 06-03p ("SSR 06-03p") states that opinions from other sources are important and "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." 71 F.R. 45593-03, 2006 WL 2263437 (Aug. 9, 2006). Furthermore, SSR 06-03p provides that the factors in 20 C.F.R. §§404.1527(D) and 416.927(d) can be applied to opinion evidence from other sources and that an ALJ should generally explain the weight given to these opinions from other sources.

As mentioned above, the Plaintiff argues that Ms. Stanley's opinion should have been given greater weight because she regularly treated him, examined his medical records, and her

16

opinions are consistent with Dr. Baker and Dr. Salekin. The Court finds that the ALJ's explanation for giving Ms. Stanley's opinion little weight comports with SSR 06-03p. As an "other source," Ms. Stanley's opinion is not subject to any special degree of deference. See Meuzelaar v. Comm'r of Soc. Sec., No. 15-2341, 2016 WL 2849305, at *2 (6th Cir. 2016) (holding that "the opinion of a nurse or a nurse practitioner is entitled to less weight than a physician's opinion because a nurse is not an 'acceptable medial source'"). Here, the ALJ acknowledged Ms. Stanley's treatment relationship with the Plaintiff by referring to Ms. Stanley's letter and medical assessment as a "treating source statement." Moreover, the ALJ explicitly stated that Ms. Stanley's opinion was given little weight and explained the reasons for giving the opinion little weight. Specifically, the ALJ cited that the objective testing was inconsistent with Ms. Stanley's opinion, including the oximetry results, spinal x-rays, and the pulmonary function test. The Plaintiff argues that Ms. Stanley's opinion was consistent with Dr. Baker's and Dr. Salekin's opinion,[2] but the ALJ afforded Dr. Baker's and Dr. Salekin's opinion little weight as well, and the ALJ explained the reasons for giving their opinions little weight. Accordingly, the Court finds the Plaintiff's argument not well-taken.

*(3) C.M. Salekin, M.D.*

The Plaintiff argues that the ALJ failed to properly analyze the medical assessment by Dr. Salekin. The Plaintiff asserts that the ALJ erroneously claimed that Dr. Salekin did not treat him or that Dr. Salekin did not fully evaluate any other alleged conditions. The Plaintiff asserts that the ALJ committed legal error in failing to properly evaluate Dr. Salekin's opinion.

The Commissioner argues that the ALJ reasonably gave little weight to Dr. Salekin's

---

[2] Dr. Baker's limitations are not entirely consistent with Ms. Stanley's limitations, but it appears Dr. Baker was assessing the Plaintiff's pneumoconiosis and chronic bronchitis, while Ms. Stanley emphasized the Plaintiff's back and neck issues.

opinion. The Commissioner asserts that the ALJ identified other regulatory factors, such as consistency and supportability, which undermined Dr. Salekin's opinion. In addition, the Commissioner asserts that when there is conflicting evidence in the record, the ALJ must resolve the conflicts. The Plaintiff replied arguing that Dr. Salekin performed a physical examination and that Dr. Salekin's opinion is consistent with Dr. Baker's and Ms. Stanley's opinion.

Dr. Salekin saw the Plaintiff on March 31, 2012, and noted that he (Dr. Salekin) was an evaluating physician. [Tr. 360]. It appears that he did not review any diagnostic testing, except a hearing test dated December 1, 2011. [Tr. 361]. Dr. Salekin performed a physical examination on the Plaintiff. [Tr. 368]. Dr. Salekin gave the Plaintiff a 17% to the body as whole and stated that the Plaintiff "may qualify for additional impairment for lungs and back and neck." [Tr. 362]. Dr. Salekin noted that the Plaintiff could lift a maximum of fifteen pounds but could frequently carry ten pounds. [Tr. 363]. He opined that the Plaintiff could stand and/or walk less than three hours and sit for less than three hours. [Tr. 363]. Dr. Salekin noted that the Plaintiff's ability to push and pull was also limited. [Tr. 363]. Dr. Salekin opined that the Plaintiff could never climb or twist, frequently balance, and could occasionally stoop, kneel, crouch, and crawl. [Tr. 363]. Finally, Dr. Salekin noted that the impaired activities were due to the Plaintiff's neck, back pain, and shortness of breath. [Tr. 363].

With respect to Dr. Salekin's opinion, the ALJ gave it little weight. [Tr. 27]. The ALJ explained that Dr. Salekin did not treat the Plaintiff and that he did not fully evaluate any other alleged conditions. The ALJ explained that while Dr. Salekin recommended diagnostic testing for the Plaintiff's back and breathing impairments, these were never ordered or reviewed by him. The ALJ concluded, "Subsequently, without these recommendations being followed, his opinion was not based on objective evidence causing them to be contradictory to the diagnostic findings

18

submitted within the evidence." [Tr. 27].

The Plaintiff argues that the ALJ erroneously claimed Dr. Salekin did not treat the Plaintiff or fully evaluate any other alleged conditions. The Court has reviewed the record, and the ALJ was correct in that Dr. Salekin did not treat the Plaintiff. In fact, Dr. Salekin notes that he is an "evaluating physician." [Tr. 360]. In addition, the ALJ stated that Dr. Salekin did not "fully evaluate" the Plaintiff and explained that he did not order diagnostic testing or review diagnostic testing for any of the other alleged conditions. A review of Dr. Salekin's March 31 medical record shows that while he performed a physical examination, Dr. Salekin did not review any medical tests, except a hearing test. Moreover, Dr. Salekin recommended diagnostic testing and noted that an impairment for his neck, back, and lung would be issued pending the work-up recommended. [Tr. 369]. There are no other medical records from Dr. Salekin. The ALJ explained why she found that Dr. Salekin did not "fully" evaluate the Plaintiff, and she explained her reasoning for giving Dr. Salekin's opinion little weight. Although the Plaintiff argues that Dr. Salekin's opinion is consistent with Ms. Stanley's opinion and Dr. Baker's opinion, the ALJ did not give these opinions much weight. Accordingly, the Plaintiff's argument is not well-taken.

### C. Vocational Expert Testimony

The Plaintiff argues that the ALJ's residual functional capacity determination is not consistent with Dr. Warner's residual functional capacity evaluation. Specifically, the Plaintiff states that the ALJ gave great weight to Dr. Warner's opinion, but when the ALJ asked the hypothetical to the vocational expert, the ALJ did not include any limitations regarding the Plaintiff's ability to use his right upper extremity for gross and/or fine manipulation.

The Commissioner responds that the ALJ properly assessed the Plaintiff's residual functional capacity evaluation and solicited testimony of a vocational expert to determine that

19

the Plaintiff could perform other work. The Commissioner asserts that the ALJ posed a hypothetical question to the vocational expert that included all of the limitations in the residual functional capacity evaluation. The Commissioner avers that with respect to Dr. Warner's opinion, the ALJ gave great weight to some, but not all, all of her limitations. Specifically, the Commissioner argues that the ALJ found that the hand limitations were unsupported by the objective medical evidence and the record as a whole.

Susan Warner, M.D., completed a Residual Functional Capacity Assessment, which she signed on August 19, 2012. [Tr. 87-90]. In the assessment, she opines that the Plaintiff has gross and fine manipulation with respect to his right hand. [Tr. 88]. The ALJ gave great weight to State Agency physicians who opined the claimant had communications and environmental limitations. [Tr. 27]. Specifically, with respect to Dr. Warner's opinion, the ALJ stated, "The longitudinal evidence supports Dr. Warner's conclusion that the claimant was limited in the performance of postural activities due to the combination of impairments. Furthermore, the determination that the claimant remained able to lift and carry up to 20 pounds was consistent with the medical evidence of record demonstrating that the claimant's impairments were amendable to medical management." [Tr. 27]. The Plaintiff argues that the ALJ did not include Dr. Warner's limitations regarding the Plaintiff's ability to use his right upper extremity for gross and/or fine manipulation. However, the ALJ explicitly addressed the Plaintiff's issues with his right hand. The ALJ found as follows:

> His credibility is further in question in light of hearing testimony denying he has made progress, in contradiction to the medical records. For instance, he testified he cannot grip and often drops things due to problems with the normal grip strength within the record (Exhibit 7F). Further, he reported he has taken up 'whittling' as a pastime that would indeed require use of his dominant right hand. As previously mentioned, he admits he still

hunts and that activity necessitates loading and shooting the gun.

Thus, as the Commissioner argues, the ALJ gave weight to some of Dr. Warner's opinions, and the ALJ explained why she did not include limitations with respect to his right hand. Accordingly, the Court finds the Plaintiff's argument not well-taken.

## VI.    CONCLUSION

Based upon the foregoing, it is hereby **ORDERED** that the Plaintiff's Motion for Summary Judgment    [**Doc. 13**] be **DENIED**, and the Defendant's Motion for Summary Judgment [**Doc. 15**] be **GRANTED**.  The Clerk of Court will be directed to **CLOSE** this case.

**IT IS SO ORDERED.**

ENTER:


_____ s/ C. Clifford Shirley, Jr. _
United States Magistrate Judge